UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SENIOR LIVING PROPERTIES LLC TRUST, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:04-CV-0816-G |
| CLAIR ODELL INSURANCE AGENCY LLC d/b/a CLAIR ODELL GROUP, ET AL., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff, Senior Living Properties, L.L.C. Trust ("SLP" or the "SLP Trust"), to disqualify the law firm of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP ("WEMED") from its representation of the defendants Clair Odell Insurance Agency, LLC d/b/a Clair Odell Group and Mellon Insurance Agency, Inc. (collectively, "COG"). For the reasons discussed below, SLP's motion to disqualify is granted.

## I.  BACKGROUND

The SLP Trust is the successor-in-interest and assignee of certain claims arising from the SLP bankruptcy. Plaintiff's Motion to Disqualify [WEMED] and Brief in

Support ("Motion to Disqualify") at 2.  Among the claims assigned to the SLP Trust

are some arising from various personal injury and insurance litigation.  *Id.*  Prior to

SLP's bankruptcy filing, WEMED -- through its Dallas office -- defended SLP against

those personal injury claims.  *Id.*  The SLP Trust paid WEMED over $32,000.00 for

its work on these claims.  *Id.* at 3.  Additionally, WEMED was paid for services

rendered prior to the creation of the trust, and the SLP Trust seeks recovery of those

payments in this action.  *Id.*  Finally, WEMED itself has filed an unsecured claim in

the SLP bankruptcy.  *Id.*  Some of this claim has been paid by the SLP Trust, but the

SLP Trust intends to satisfy WEMED's claim with any proceeds from a judgment in

this action.  *Id.*

      Michael Cawley ("Cawley") is counsel of record for COG in this action.  *Id.* at

4.  Cawley has represented COG for over ten years. [WEMED's] Amended Response

and Brief in Opposition to Plaintiff's Motion to Disqualify ("Response") at 2.

Cawley became a partner at WEMED -- in its Philadelphia office -- on April 1, 2005.

*Id.*

      On April 8, 2005, SLP filed this motion to disqualify WEMED from its

representation of COG in this action, based upon Cawley's representation of COG

and his recent association with WEMED.  Motion to Disqualify at 1, 4.  SLP will not

consent to WEMED's representation of COG in this action.  *Id.* at 5.

## II. ANALYSIS

### A. Relevant Ethical Canons

In determining whether disqualification of an attorney is appropriate, this court should consider the following ethical canons: (1) the ABA Model Rules of Professional Conduct (the "Model Rules"), (2) the Texas Disciplinary Rules of Professional Conduct (the "Texas Rules"), and (3) the local rules of the Northern District of Texas (the "Local Rules"). *Federal Deposit Insurance Corporation v. United States Fire Insurance Company*, 50 F.3d 1304, 1312 (5th Cir. 1995); *Advanced Display Systems, Inc. v. Kent State University*, No. 3-96-CV-1480-BD, 2001 WL 1524433 at * 4 (N.D. Tex. Nov. 29, 2001) (Kaplan, Magistrate J.). The Model Rules embody "the national standards utilized [in] this circuit in ruling on disqualification motions." *United States Fire Insurance Company*, 50 F.3d at 1312. Consideration of the Texas Rules is relevant because the Local Rules and the Texas Rules are virtually identical. See *United States Fire Insurance Company*, 50 F.3d at 1312.

Model Rule 1.7(a) provides, in relevant part:

> A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client [or] a former client . . . .

- 3 -

Model Rule of Professional Conduct 1.7(a).  In certain circumstances, a client may

consent to representation even though a conflict of interest exists.  Model Rule

1.7(b).  According to the Model Rules,

> [a] lawyer who has formerly represented a client in a
> matter shall not thereafter represent another person in the
> same or a substantially related matter in which that
> person's interests are materially adverse to the interests of
> the former client unless the former client gives informed
> consent, confirmed in writing.

Model Rule 1.9(a).  The Model Rules impute conflicts under both Rules 1.7 and 1.9

to all lawyers associated in a firm with the conflicted attorney.  Model Rule 1.10(a).

In most circumstances, a client may consent to representation by the firm,

notwithstanding the existence of a conflict.  Model Rule 1.10(c).

Similarly, the Texas Rules provide:

> a lawyer shall not represent a person if the representation
> of that person:
>
> > (1)  involves a substantially related matter in
> > which that persons interests are materially
> > and directly adverse to the interests of
> > another client of the lawyer or the lawyers
> > firm; or
> >
> > (2)  reasonably appears to be or become
> > adversely limited by the lawyers or law firm's
> > responsibilities to another client. . . .

Texas Rule 1.06(b).  Further, "a lawyer who personally has formerly represented a

client in a matter" may not, without prior consent, represent another person in "the

- 4 -

same or a substantially related matter." Texas Rule 1.09(a)(3). Like the Model

Rules, the Texas Rules provide that conflicts are imputed to lawyers associated in a

firm. Texas Rules 1.06(f), 1.09(b).

## B. Is Disqualification Appropriate?

In its motion to disqualify, SLP asserts that "because of WEMED's former

representation of the SLP Trust, all lawyers at WEMED now are prohibited from

representing a different client adverse to the SLP Trust in the same or a substantially

related matter." Motion to Disqualify at 6. SLP further argues that this prohibition

applies equally to Cawley -- due to his representation of COG -- even though he

joined the firm after its representation of SLP.[*] *Id.*

### 1. *Standard for Disqualification due to Former Representation*

"A party seeking to disqualify opposing counsel on the ground of former

representation must establish two elements:  1) an actual attorney-client relationship

between the moving party and the attorney [it] seeks to disqualify and 2) a

substantial relationship between the subject matter of the former and present

representations." *In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992)

(citing *Johnston v. Harris County Flood Control District*, 869 F.2d 1565, 1569 (5th Cir.

---

[*]       In its reply brief, SLP also argues that WEMED's representation of
COG has not terminated, and thus a concurrent conflict also exists. Reply Brief
Supporting Plaintiff's Motion for Disqualification at 1-3. Because the court
concludes that disqualification is required by virtue of WEMED's former
representation of SLP, it need not reach this latter argument.

1989)), *cert. denied sub nom.*, *Northwest Airlines, Inc. v. American Airlines, Inc.*, 507 U.S. 912 (1993). "[A] substantial relationship may be found only after 'the moving party delineates with specificity the subject matters, issues and causes of action' common to prior and current representations and the court engages in a 'painstaking analysis of the facts and precise application of precedent.'" *Id.* (citing *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1029 (5th Cir.), *cert. denied*, 454 U.S. 895 (1981)). The burden of establishing the substantial relationship between the prior and current representations is on the party moving for disqualification. *Id.* A movant's successful establishment of a substantial relationship between the current and prior representation creates an irrebuttable presumption that relevant confidential information was disclosed during the prior representation. *Id.*

### 2. *Relationship between WEMED's Former Representation of SLP and its Current Representation of COG*

In this instance, neither party disputes that there was an actual attorney-client relationship between WEMED and SLP. *See generally* Motion to Disqualify; Response. Accordingly, the success of SLP's motion to disqualify turns on whether Cawley's current representation of COG is substantially related to WEMED's former representation of SLP. In its motion to disqualify, SLP states:

> In this case, the SLP Trust seeks damages occasioned by COG's breach of fiduciary duties, breach of contract and violations of the duty of good faith and fair dealing. The SLP Trust believes evidence in this case will demonstrate that COG's misrepresentations and malfeasance as SLP's

> designated broker caused SLP's insurers to deny coverage
> and seek rescission of SLP's insurance policies. In the SLP
> bankruptcy, SLP sued its insurers to obtain coverage for
> numerous personal injury claims filed against SLP. SLP's
> insurers hired WEMED to represent SLP in the defense of
> those claims. Because of the insurers' position regarding
> coverage, however, SLP was required to pay WEMED for
> those defense expenses. The SLP Trust seeks, among other
> things, recovery of defense expenses it paid to WEMED as
> an element of damage in this case. By producing invoices
> and other documents, WEMED has cooperated with the
> SLP Trust in its quest for those damages. In contrast,
> COG pursues an active interest in precluding the SLP
> Trust from recovering those damages or in attacking the
> amount of damages.

Motion to Disqualify at 5. SLP asserts that the current and former representations

are substantially related, because:

> the SLP Trust seeks damages for the difference between the
> liquidated value of the . . . claims and the amount of
> insurance the debtors actually received for those same
> claims. WEMED's advice to the SLP Trust regarding the
> resolution of the . . . claims contributed to the ultimate
> amount at which the claims were liquidated. The
> bankruptcy court ultimately approved all of the liquidated
> values. Because the liquidated values form part of the
> damage analysis for the SLP Trust in this case, WEMED's
> involvement in those valuations demonstrates that its
> advice is important to the issues involved in a way that
> reasonable persons would understand.

Motion to Disqualify at 8.

In response, WEMED argues that SLP has failed to meet its burden because it

"wholly failed to specifically delineate common subject matters, issues, and causes of

action." Response at 6. WEMED argues that no commonality exists between the

causes of action in this case and the causes of action in the prior representation. *Id*. at 6-7.

In this case, SLP has alleged the following causes of action: (1) breach of fiduciary duty, (2) breach of contract, and (3) violations of the duty of good faith and fair dealing. *Id*. at 6; Motion to Disqualify at 5. WEMED asserts that none of these causes of actions was included in the prior representation. To buttress its argument, WEMED contends that the use of the word "and" in the Fifth Circuit's analysis above -- that a substantial relationship may be found only after the a specific delineation "the subject matters, issues *and* causes of action common to [prior and current] representations" -- necessitates identical causes of action before a court can determine that disqualification is appropriate. *Id*. at 7 (citing *Abney v. Wal-Mart*, 984 F. Supp. 526, 529 (E.D. Tex. 1997)).

The court finds WEMED's argument unpersuasive. The former representation and the current representation need not involve identical causes of action. Such a strict requirement would undermine the policy underlying the rules against conflicting representations -- the preservation of the attorney-client relationship and the protection of a client's confidential information. See *American Airlines*, 972 F.2d at 619. The two causes of action "need only involve the same 'subject matter' in order to be substantially related." *Id*. at 625 (citing *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341 (5th Cir. 1981); *Duncan*, 646 F.2d 1020).

SLP has delineated several reasons why WEMED's representation of COG in this action is substantially similar to the WEMED's representation of SLP in the personal injury actions in the bankruptcy.  It is likely that WEMED attorneys acquired knowledge of the valuation of the injury settlements for which SLP seeks recovery from COG in this action.  Furthermore, SLP's motion for disqualification finds support in the fact that WEMED's attorneys' fees originating from the prior representation may be at issue in this action.  The court therefore concludes that WEMED's former representation of SLP and its current representation of COG are substantially related.

In its final argument in response to SLP's motion to disqualify, WEMED asserts that the "sheer distance and physical separation of the [Philadelphia and Dallas offices] indicates that there is absolutely no reasonable probability that confidential information in possession of WEMED-Dallas will be sued against SLP Trust by WEMED-Philadelphia in this litigation."  Response at 9.  This argument is also unpersuasive.  Neither the Model Rules nor the Texas Rules, in imputing conflicts, make an exception for a firm with multiple offices.  See *In re ESM Government Securities, Inc.*, 66 B.R. 82, 84 (S.D. Fla. 1986) (imputation of conflicts is applicable "regardless of the size of the firm [or] how many separate offices it may maintain. . .").

The court finds that WEMED's former representation of SLP and its representation of COG in this action are substantially related.  Accordingly, WEMED is disqualified from representing COG in this matter.

### III.  CONCLUSION

For the reasons stated above, SLP's motion to disqualify is **GRANTED**. Accordingly, WEMED is disqualified from further representation of COG in this action.

**SO ORDERED**.

May 12, 2005.

_____
A. JOE FISH
CHIEF JUDGE